UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BAYLAKE BANK,

        Plaintiff,

v.                                                  Case No. 08-C-608

VILLAGE OF HOBART,

        Defendant.

## DECISION AND ORDER

The Village of Hobart has moved for an award of attorneys' fees in this bankruptcy action. The facts central to the case are found in this Court's decision and order dated October 1, 2008, as well as in this Court's affirmance of the appeal from the bankruptcy court (Case No. 08-mc-59). In this case, I found the restrictions on transfer applicable to the golf course property at issue to be enforceable. Along with those alienability restrictions, the covenants provide for attorneys' fees to the prevailing party:

> In the event that any legal action is filed arising out of, or relating to these Restrictive Covenants and the Village of Hobart is a party to said action, in the event that the Village of Hobart is a prevailing party, all non-prevailing parties, jointly and severally, shall be liable to the Village of Hobart for all costs and expenses incurred by the Village of Hobart in defending or prosecuting such action, including actual attorney's fees.

(Dkt. # 21, Ex. B, ¶ 7.)

Baylake Bank does not contest the premise that the Village is a prevailing party entitled to a fee award. It does, however, object to the amount of attorneys' fees the Village seeks. Before

addressing Baylake Bank's objections, it is necessary to examine the unstated premise underlying those objections. Specifically, Baylake Bank's objections are premised on the idea that it must only reimburse the Village for its *reasonable* attorneys' fees. Normally that is a sound premise, but in this case the clause at issue provides for "actual" attorneys' fees, rather than the more common "reasonable" attorneys' fees found in other clauses and fee shifting statutes. The Village makes note of this adjective without pressing the point. (Which perhaps is not surprising, since few attorneys would want to argue that they could collect their fees even if they were unreasonable.)

Some courts have refused to delve into the reasonableness of fees awarded when there is no explicit requirement (either statutory, contractual, or otherwise) to do so. *See, e.g., Sun-Tek Industries, Inc. v. Kennedy Sky-Lites, Inc.,* 865 F.2d 1254, 1255 (Fed. Cir. 1989) ("We therefore decline to make the kind of inquiry into the 'reasonableness' of the attorney fees and costs that Kenergy urges.") In other circumstances, courts find an implicit requirement that fees awarded must be reasonable, regardless of what the pertinent clause says. *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC,* 549 F. Supp.2d 274, 278 (E.D.N.Y. 2008) ("it appears that under Wisconsin law, although the indemnification agreement provides for the recovery of actual attorneys' fees, such fees are also reviewed by the Court for reasonableness.")

It seems clear that even a contract awarding "actual" fees must in some way recognize that the fees incurred must reasonably be necessary to the litigation in question. By their own terms, such clauses do not give parties *carte blanche* to run up the tab for legal work totally unrelated to the action at issue. Moreover, attorneys' professional obligations forbid them from charging "unreasonable" fees, and so in that sense the court is obliged to review a fee request to ensure that

2

the Court itself is not an instrument used to impose unethically high fees.[1] Yet (at the risk of splitting hairs) reviewing a fee award to ensure it is not unreasonable (for ethical purposes) is arguably different than reviewing an award to determine whether it may br affirmatively described as "reasonable."

Although the covenant's use of "actual" (versus "reasonable") hints at a less searching level of review, I need not resolve that question because under either standard the Village's fees appear reasonable. Notably, Baylake Bank does not object to the Village's attorneys' billing rates or their attorneys' skill and experience. Instead, its objection is limited to the scope and the staffing of the legal work the Village received. As to the scope of work, its principal objection involves the fact that the Village retained counsel prior to the filing of the adversary complaint (July 2008) in this case. It asserts that it should not be responsible for the Village's sense of caution and pre-complaint preparation. But pre-complaint preparation is sometimes part-and-parcel of a meaningful defense. Nothing in the fees clause suggests the clock can only start ticking on the day a case is filed. In fact, such a conclusion would make no sense because the clause also allows fees if the Village is the prevailing party when it is "prosecuting" the case. Naturally when the Village *brings* a case it would incur significant fees *prior to* the filing of its complaint, and no one would suggest these

---

[1]This is suggested in an unpublished case from the Wisconsin Court of Appeals:

> Although there is a contract in this case for "actual" fees, it is always appropriate for the court to review a bill submitted for reasonableness: "[t]he burden of proof is upon the attorney submitting the fees to prove the reasonableness of a fee when it is questioned." *See Standard Theatres, Inc. v. DOT,* 118 Wis.2d 730, 748, 349 N.W.2d 661 (1984). This is because attorneys practicing in this state have an ethical obligation to charge reasonable fees.

*Lyman Lumber of Wisconsin, Inc. v. Yourchuck Video, Inc.,* 2005 WI App 88, ¶ 38, 2005 WL 701192, *8 (Wis. Ct. App. 2005).

3

could not be awarded. It follows that any fees it reasonably incurred prior to the filing of the complaint should be awarded when the Village is a defendant as well. This is especially so when all indications were that the debtor had indicated in no uncertain terms that it would attempt to have the covenants voided.[2]

Baylake Bank also objects to what it describes as overstaffing and an abundance of partners who did work the Bank believes was more properly handled by associates or paralegals. The Bank's criticisms ring somewhat hollow. At the outset I note that more typically it is a *plaintiff* who is entitled to attorneys' fees – through 42 U.S.C. § 1988, for example – and it is the defendant who must argue that the plaintiff's fees were excessive. The plaintiff in such cases has far more control over the course of the litigation, and so he is arguably more likely to run up the tab knowing that even a minor victory may result in a huge fee award. But when the plaintiff's own actions – here, filing a multi-prong challenge to the enforceability of the restrictive covenants – precipitate a response from the defendant, the plaintiff is in a much weaker position to complain that the defendant has answered his challenge aggressively. After all, one of the principal goals of a prevailing parties clause is to *discourage* litigation in the first place, and it is the plaintiff who takes the risk of bringing litigation in the face of an attorney's fees clause.

As to the Bank's specific complaints, it has given a number of examples of what it believes was overstaffing or excessively long billing days, but the examples it cites are emblematic of a case that was taken very seriously rather than one that was overstaffed. Recall that the challenge to the restrictive covenants was a powerful one, involving questions of public policy, Indian law and federal preemption. And, as the Village points out, all this occurred within the umbrella of a

---

[2]The Village's attorneys also seek nominal fees arising after the judgment, and I conclude there is no basis to cut off the fee award at the date of judgment.

4

bankruptcy case. Notably, the Bank's challenges were not only substantive but procedural. It objected to withdrawing the reference from the bankruptcy court, and that dispute involved significant resources. This Court certainly devoted significant resources to the challenges the Bank raised, and it should not come as a surprise that the Village did as well.

I also note that the Village's defense was a successful one, and in light of what it stood to lose the attorneys' fees appear eminently reasonable. After all, the Village was faced with the possibility of losing some $200,000 in annual tax revenues – no small sum for any Village. To expend roughly $217,000 in attorneys' fees to attempt to keep the property within the tax fold indefinitely was hardly unreasonable. No doubt the Village had also expended significant sunk costs in drafting the covenants in the first place, and it was entitled to defend their legality vigorously. Finally, I am satisfied that the fact that partners did much of the work on this case is not reflective of abuse or unreasonableness. This is especially true considering the fact that the average rate charged by all attorneys was less than $220 (reflecting discounts given), when many of their standard billing rates (about which the Bank does not complain) were above $250. In short, these were not the bills of attorneys who were running up the tab.

In sum, the amount of fees sought is reasonable, and the Bank does not dispute its obligation to compensate the prevailing party. Accordingly, Baylake Bank is ordered to pay $217,584.96 to the Village of Hobart.

**SO ORDERED** this ___20th___ day of January, 2009.

    s/ William C. Griesbach
    William C. Griesbach
    United States District Judge

5

Case 1:08-cv-00608-WCG   Filed 01/21/09   Page 5 of 5   Document 56